```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff**,<br><br>           **v.**<br><br>$29,373.00 IN U.S. CURRENCY, and<br>$11,580.19 IN U.S. CURRENCY,<br><br>    **Defendants.** | **Civil No**. 14-1360 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

    The Court entered default judgment in this civil forfeiture action against the defendant currency after no claim to the currency was filed in the period set forth by statute. A month after default judgment was entered, Maribel Santiago-Lisboa and the estate of Santos Seda-Rodriguez moved to set aside the default judgment and filed a claim to the defendant currency. The United States opposed the motion to set aside the judgment and moved to strike the claim. For the reasons that follow, the Court **DENIES** Maribel Santiago-Lisboa's and the estate of Santos Seda-Rodriguez's motion to set aside default judgment, (Docket No. 14), and **GRANTS** the United States' motion to strike the claim, (Docket No. 16).

## I. FACTUAL BACKGROUND

The facts set forth below are drawn from the unsworn declaration under penalty of perjury[1] supporting the United States' complaint, (Docket No. 1-1).

On December 18, 2011, the U.S. Drug Enforcement Administration ("DEA") seized fifty-eight kilograms of cocaine from inside an aircraft at Las Americas International Airport in Santo Domingo, Dominican Republic. (Docket No. 1-1 at ¶ 3.) The aircraft was scheduled to fly to Puerto Rico that day and was registered to Santos Seda-Rodriguez ("Seda-Rodriguez"), a United States citizen, pilot, and owner of Jeshua Air Services, Inc. ("Jeshua"). Id. at ¶¶ 3-4. The next day, on December 19, 2011, the body of Seda-Rodriguez was found in the Dominican Republic. Id. at ¶ 6. He appeared to have been beaten to death. Id.

Thereafter, the DEA investigated Seda-Rodriguez's activities. (Docket No. 1-1 at ¶ 7.) DEA agents interviewed Jeshua employees and Seda-Rodriguez's son, used a canine unit to detect controlled substances in Jeshua aircraft and vehicles, reviewed Seda-Rodriguez's phone records, and obtained information about the Customs and Border Protection's investigations of Seda-Rodriguez. Id. at ¶¶ 7-25. The DEA determined that Seda-Rodriguez was involved in smuggling narcotics and transporting illicit drug proceeds between Puerto Rico and the Dominican Republic. Id. at

---

[1] 28 U.S.C. § 1746.

Civil No. 14-1360 (FAB)                                                  3

¶ 26.  As a result, between December 2011 and February 2012, the DEA seized six aircraft, eight vehicles, and two vessels belonging to Seda-Rodriguez.  Id.  Seda-Rodriguez's widow and estate never attempted to claim these sixteen assets, which totaled $755,947 in value.  Id. at ¶ 27.

In September 2013, DEA agents received information regarding bank accounts belonging to Seda-Rodriguez.  (Docket No. 1-1 at ¶ 35.)  Two accounts were located at Banco Popular de Puerto Rico: business account number 084-209941 and personal account number 482-351425.  Id. at ¶ 36.  Seda-Rodriguez was the sole holder of both accounts.  Id. at ¶ 40.  In 2011, $16,500 in cash, in amounts ranging from $2,000 to $6,000, and $27,488 in checks drawn from a different account owned by Seda-Rodriguez had been deposited into the personal account.  Id. at ¶ 33.  No one associated with Seda-Rodriguez (including his widow and members of his estate) attempted to remove funds from either account in the nearly two years since Seda-Rodriguez's death in December 2011.  Id. at ¶ 40.  On November 26, 2013, the DEA seized $29,373.00 and $11,580.19 from the Banco Popular accounts pursuant to a federal warrant to seize property subject to forfeiture.  Id. at ¶ 1.  On January 16 and 22, 2014, the DEA mailed notices of the two seizures to Seda-Rodriguez's widow, Maribel Santiago-Lisboa, who received them on January 22 and 27, 2014.  (Docket No. 14-1 at ¶ 1; Docket No. 14-2 at ¶ 1.)

**II.    PROCEDURAL BACKGROUND**

On May 6, 2014, the United States filed a verified complaint for forfeiture *in rem* against defendants $29,373.00 in U.S. currency and $11,580.19 in U.S. currency pursuant to 21 U.S.C. §§ 841, 881, and 18 U.S.C. §§ 1956, 981.  (Docket No. 1.)  The United States included an unsworn declaration under penalty of perjury by a DEA special agent in support of the complaint. (Docket No. 1-1.)  On May 13, 2014, the Clerk of the Court issued a warrant of arrest *in rem* for the defendant currency.  (Docket No. 5.)   Notice of the seizures was published on the www.forfeiture.gov website for thirty consecutive days from May 16 through June 14, 2014.  (Docket No. 7.)

On June 10, 2014, plaintiff served notice and the complaint on Maribel Santiago-Lisboa, both personally and through her attorney, Heriberto Güivas-Lorenzo.  (Docket No. 16-1 at pp. 1, 3.)  On June 10, 2014, plaintiff also served notice on the estate of Seda-Rodriguez, through Maribel Santiago-Lisboa and through Mr. Güivas-Lorenzo, who was also the estate's attorney.  Id. at pp. 2, 4.

The applicable statute provides that claims to seized property may be filed no later than thirty days after (1) the date of service of the complaint, or (2) the date of the final publication of notice of the complaint.   18 U.S.C. § 983(a)(4)(A). Accordingly, the period to file a claim in this case expired on July 14, 2014, thirty days after the final publication of notice of

Civil No. 14-1360 (FAB)                                                 5

the complaint.  The United States moved for default judgment on that day.  (Docket No. 9.)  The Court granted the motion and entered judgment in favor of the United States against the defendant currency on July 15, 2014, indicating that any claim brought on or after that date would be time-barred.  (Docket No. 12.)

On August 11, 2014, Maribel Santiago-Lisboa and the estate of Seda-Rodriguez (collectively, "claimants") filed a claim to the defendant currency through attorney Heriberto Güivas-Lorenzo.  (Docket No. 13.)  This was claimants' first appearance in the action.  Claimants also moved the Court to set aside the default judgment.  (Docket No. 14.)  On August 19, 2014, plaintiff United States moved to strike the claim and opposed the motion to set aside the default judgment.  (Docket No. 16.)  Claimants did not oppose the United States' motion to strike.

### III. MOTION TO SET ASIDE DEFAULT JUDGMENT

A court may set aside a default judgment in accordance with Federal Rule of Civil Procedure 60(b) ("Rule 60(b)").  Fed. R. Civ. P. 55(c).  Rule 60(b)(1) provides that "mistake, inadvertence, surprise, [and] excusable neglect" are grounds for relief from a final judgment. Fed. R. Civ. P. 60(b)(1).  Relief pursuant to Rule 60(b) "is extraordinary in nature," and a party seeking this relief must demonstrate, "at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary

Civil No. 14-1360 (FAB)                                                6

relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

Here, claimants meet their burden on two of these four criteria.  First, their motion to set aside the judgment, filed twenty-seven days after the Court entered judgment, was timely.  See Fed. R. Civ. P. 60(c)(1) (providing that a Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment").  Second, setting aside the judgment would not unfairly prejudice plaintiff United States; the United States concedes it by not identifying any prejudice in its opposition.  See Docket No. 16.

Claimants fail to carry their burden, however, on the remaining two criteria.  First, claimants make no showing "that exceptional circumstances exist, favoring extraordinary relief."  See Karak, 288 F.3d at 19.  Claimants explain that they failed to file a claim timely because it took time to contact the multiple members of Seda-Rodriguez's estate and because their attorney was dealing with the hospitalization of his ill father.  (Docket No. 14 at ¶¶ 9-10.)  Under these circumstances, claimants should have filed a motion requesting an extension of time to file a claim.  But they did not make this simple request, and they offer no reason

Civil No. 14-1360 (FAB)                                                  7

for their inability to do so.  As such, their proffered explanations do not justify relief pursuant to Rule 60(b)(1).  See, e.g., Rivera-Velazquez v. Hartford Steam Boiler Inspection & Ins. Co., 750 F.3d 1, 5 (1st Cir. 2014) (explaining that "an attorney's illness may constitute an extraordinary circumstance warranting relief under Rule 60(b)(1)," but the "party seeking relief must persuade the court not only that his attorney was ill but also that the illness prevented the party from taking reasonable steps to prosecute the case or to inform the court of an inability to do so").

Claimants also state that they failed to file a claim timely because they "were in the process of organizing all [c]laimants to jointly represent them, [but] by inadvertence and/or mistake, the [v]erified [c]laim had not been presented, though [they] thought otherwise."  (Docket No. 14 at ¶ 10.)  Claimants do not elaborate on the circumstances of their mistaken belief that they had filed a claim.  Without more, the Court cannot evaluate whether the mistake is justified, excusable, or honest. See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2858 (3d ed. 2012) (explaining that a party seeking Rule 60(b)(1) relief "must make some showing justifying the failure to avoid the mistake or inadvertence"); accord Cashner v. Freedom Stores, Inc., 98 F.3d 572, 576 (10th Cir. 1996) (finding that Rule 60(b)(1)'s "mistake" provision allows for the reconsideration of

Civil No. 14-1360 (FAB)                                                8

judgments "only where: (1) a party has made an *excusable* litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order" (emphasis added)). Simply alleging the fact of a mistaken belief does not suffice to show an "exceptional circumstance" warranting Rule 60(b) relief.

Finally, to the extent that claimants allege that the mistake of their attorney should not be visited upon them, it is well-settled that "the neglect of an attorney acting within the scope of his or her authority is attributable to the client." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 38 (1st Cir. 2013).

As to the remaining criterion, claimants make no attempt to show that they have "the right stuff to mount a potentially meritorious claim" if the judgment is set aside. See Karak, 288 F.3d at 19. In a civil forfeiture action, the United States has the burden "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Here, the United States alleges that the seized funds are subject to forfeiture because they were used to facilitate the sale of controlled substances and were involved in illegal money laundering transactions. (Docket No. 1 at ¶ 6.) Accordingly, to demonstrate that they could "mount a potentially meritorious claim," claimants must argue that the United States would not be able to carry its

Civil No. 14-1360 (FAB)                                                    9

burden at trial.  For example, they might show that the seized funds derived from legal sources.  Claimants, however, make no attempt to demonstrate how their claim would be meritorious.

Thus, the Court concludes that claimants are not entitled to Rule 60(b)'s extraordinary relief and **DENIES** their motion to set aside judgment.

### IV.  MOTION TO STRIKE CLAIM

The United States moves to strike the claim on two grounds: (1) that claimants lack constitutional standing to contest the forfeiture because they have not asserted a legal right of ownership over the defendant property, and (2) that claimants lack statutory standing because they did not comply with Rule G(5)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (generally, "Rule G") and did not file a timely claim.  (Docket No. 16 at pp. 2-3.)

#### A.   Constitutional Standing

Pursuant to Rule G(8)(c)(i)(B), the United States may move to strike a claim "because the claimant lacks standing." Supp. R. G(8)(c)(i)(B).  To establish constitutional standing in a civil forfeiture case, a claimant must "demonstrat[e] an ownership or possessory interest in the seized property." United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 57 (1st Cir. 2013). The requirements for demonstrating standing are forgiving at the

initial stages of intervention: an "allegation of ownership, coupled with some evidence of ownership, is sufficient." Id.

Here, the United States and the claimants agree that the defendant money was seized from two bank accounts belonging to Seda-Rodriguez. See Docket No. 1-1 at ¶ 37; Docket No. 13 at ¶ 5. Claimant Maribel Santiago-Lisboa alleges that she was married to Seda-Rodriguez from August 3, 1996, until his death in 2011, and that all property acquired during their marriage - including the money seized from the accounts - legally belongs to both spouses as marital property. (Docket No. 13 at ¶¶ 5-7.) She presents a copy of their Puerto Rico marriage license as evidence of their conjugal partnership. (Docket No. 13-1 at p. 1.) The estate of Seda-Rodriguez also claims ownership of the seized funds and presents a resolution of the Puerto Rico Court of First Instance, Aguadilla Superior Division, to prove that Seda-Rodriguez's estate comprises his widow and seven children. See id. at p. 2; Docket No. 13 at ¶ 8.

The United States presents two undeveloped and misplaced arguments to challenge the claimants' constitutional standing. It first alleges that a "bald assertion of ownership" is not sufficient. (Docket No. 16 at p. 4.) But here, claimants' assertions of ownership are not "bald" - they are based on their statuses as Seda-Rodriguez's widow and estate and are supported by documentary evidence. The United States next argues that the

Civil No. 14-1360 (FAB)                                            11

claimants' allegations are "irrelevant" because "forfeiture is not limited to commingled money."  Id. at p. 6.  "Commingling" in the civil forfeiture context occurs when funds from legitimate and illegitimate sources are deposited into the same account.  See United States v. McGauley, 279 F.3d 62, 65 (1st Cir. 2002).  Here, claimants do not allege that funds in the accounts were commingled, so the United States' argument is inapposite.

The Court finds that the claimants' allegations of their legal ownership interests in the funds seized from Seda-Rodriguez's accounts, supported by documentary evidence proving that claimants are Seda-Rodriguez's widow and estate, are sufficient to establish constitutional standing.  See U.S. Currency, $8,440,190.00, 719 F.3d at 57.

   **B.   Statutory Standing**

In addition to constitutional standing, claimants in civil forfeiture actions must establish statutory standing. United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003).  Rule G(5) and 18 U.S.C. § 983(a)(4) (generally, "section 983") set forth the statutory standing requirements for contesting forfeiture.

Pursuant to Rule G(5), a claim must (1) "identify the specific property claimed," (2) "identify the claimant and state the claimant's interest in the property," (3) "be signed by the

Civil No. 14-1360 (FAB)                                                    12

claimant under penalty of perjury," and (4) "be served on the [designated] government attorney." Supp. R. G(5)(a)(i).  Here, the claim fails to satisfy three of these four requirements.  First, the claim does not identify the specific property.  The claim vaguely states an interest in the currency "forfeited from two (2) bank accounts" and identifies the currency values in the case caption but fails to specify the banks or the bank accounts from which the currency was seized.  <u>See</u> Docket No. 13.  Second, the claim is not signed by the claimant.[2]  The last page of the claim has a type-written "Oath Under Penalty of Perjury" with a signature line for Maribel Santiago-Lisboa, but there is no signature.  <u>See</u> <u>id.</u> at p. 4.  Third, there is no certificate of service to verify that the claim was served on the designated government attorney, although the United States does not object to this defect.

Section 983 sets forth the remaining requirements for statutory standing.  It provides that a claim must be filed no later than thirty days after the date of service of the complaint or the date of the final publication of notice of the complaint.  18 U.S.C. § 983(a)(4)(A).  A claimant must also file an answer to the complaint no later than twenty days after filing the claim.  <u>Id.</u> § 983(a)(4)(B).  Here, claimants fail both of these statutory

---

[2] Requiring the claim to be signed is not a procedural technicality: "[i]t forces claimants to assert their alleged ownership under oath, creating a deterrent against filing false claims." <u>United States v. $23,000 in U.S. Currency</u>, 356 F.3d 157, 163 (1st Cir. 2004).

Civil No. 14-1360 (FAB)                                                                13

requirements.  They filed the claim sixty-two days after directly receiving notice and fifty-eight days after the final publication of notice of the complaint.  Additionally, claimants never filed an answer to the complaint.

As a result of their failure to abide by Rule G(5) and section 983, claimants lack statutory standing to contest the forfeiture.  The Court accordingly **GRANTS** the United States' unopposed motion to strike the claim.

**V.   CONCLUSION**

For the forgoing reasons, the Court **DENIES** Maribel Santiago-Lisboa's and the estate of Santos Seda-Rodriguez's motion to set aside the default judgment, (Docket No. 14), and **GRANTS** the United States' motion to strike the claim, (Docket No. 16).  The claim, (Docket No. 13), is **STRICKEN.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 19, 2015.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE